UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GABRIELLE LOUISE WOBROCK,

      Plaintiff,                  Civil Action No. 17-10613

          v.                  District Judge Mark A. Goldsmith
                                    Magistrate Judge R. Steven Whalen

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Gabrielle Louise Wobrock ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act.  Parties have filed cross-motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).   For the reasons discussed below, I recommend that Plaintiff's Motion for Summary Judgment [Docket #15] be GRANTED to the extent that the case is remanded for further fact-finding consistent with § **V(B)(3)** of this Report, and that Defendant's Motion for Summary Judgment [Docket #18] be DENIED.

-1-

## I.  PROCEDURAL HISTORY

On November 19, 2013, Plaintiff applied for DIB and SSI, alleging disability as of November 13, 1995 (Tr. 182, 185).  After the initial denial of the claim, Plaintiff requested an administrative hearing, held on October 14, 2015 in Livonia, Michigan before Administrative Law Judge ("ALJ") Mary Connolly (Tr. 49).  Plaintiff, represented by attorney Lisa Welton, testified (Tr. 53-65), as did her mother, Camilla Rose Wobrock (Tr. 65-72), and Vocational Expert ("VE") Louann Castellana (Tr.  72-74).  On November 3, 2015, ALJ Connolly found that Plaintiff was not disabled (Tr. 31-42).  On January 18, 2017, the Appeals Council denied review (Tr. 1-4).  Plaintiff filed the present action on February 27, 2017.

## II. BACKGROUND FACTS

Plaintiff, born November 13, 1995, was just short of her 20th birthday at the time of the administrative decision (Tr. 42, 182).  She graduated from high school and received culinary training through a vocational program (Tr. 211).  She alleges disability as a result of Attention Deficit Hyperactivity Disorder ("ADHD"), complications resulting from a premature birth, depression, anxiety, social phobia, immaturity, and being "easily frustrated" (Tr. 210).

### A.     Plaintiff's Testimony

Plaintiff offered the following testimony:

She currently attended Schoolcraft College as a Humanities major and also took

classes in biology, business, and government (Tr. 54).  She previously took classes at Henry

Ford Community College and was planning on attending Madonna University the following

year and obtaining a degree in teaching (Tr. 54).  Her mother or father drove her to classes

because she was afraid of driving (Tr. 55).  She held a current driver's license but did not

drive (Tr. 55).

Plaintiff currently received counseling through New Oakland Adolescent Center (Tr.

55).  She also had periodic medication reviews by a psychiatrist (Tr. 56).  She took Concerta,

Luvox, and Abilify (Tr. 57).  She experienced improved concentration with Concerta (Tr.

57).  She did not experience sleep disturbances (Tr. 58).  She spent her leisure time at home

performing household chores.  Her mother sometimes had to remind her to do laundry and

tidy her room (Tr. 58).  She enjoyed reading, sewing, and going to the movies (Tr. 58).  She

did not have friends other than an individual who used to live up the street from her (Tr. 58).

She did not like to text, but used a computer to write papers (Tr. 59).  She had applied for

jobs "lots of places" online but had not received an interview (Tr. 61).  She did not

experience physical health problems (Tr. 61).

In response to questions by her attorney, Plaintiff testified that she did not handle her

own money due to her propensity to spend it on books and American Girl dolls (Tr. 61).  She

did not want to use public transportation due to "weirdos" on the bus and because she would

be dropped off at a bus stop rather than her final destination (Tr. 62).  On occasion, her

mother had to remind her to take her medication (Tr. 62-63).  She would be unable to grocery

shop due to her tendency to impulse spend and her inexperience in buying food (Tr. 63).  She

enjoyed baking but had experienced failure trying to bake unfamiliar dishes (Tr. 64-65).

### B.  Testimony of Plaintiff's Mother

Camilla Rose Wobrock offered the following testimony:

Plaintiff lacked the maturity to live on her own due to her inability to manage money

and her tendency to go off and read by herself at social events (Tr. 65).  Plaintiff had poor

concentrational abilities and had trouble following through with directions (Tr. 67).  She

exhibited frustration with difficult tasks and was prone to give up if unable to master a new

activity quickly (Tr. 68).

Plaintiff was also limited by excessive anxiety (Tr. 69).  When Plaintiff's mother lost

her job, Plaintiff exhibited excessive worry (Tr. 69).  Plaintiff was prone to becoming off task

due to worry/anxiety (Tr. 70).  She had problems adjusting to changes and was limited to

repetitive tasks (Tr. 71).  Plaintiff's mother acknowledged that Plaintiff was smart and did

"very well in school" (Tr. 72).

### C.  Medical Evidence

#### 1.  Records Related to Plaintiff's Treatment[1]

November and December, 1995 and January, 1996 records show that Plaintiff was

placed in neonatal intensive care after being delivered at 23 weeks gestation (Tr. 536-616,

---

[1]Treatment for conditions unrelated to the disability claim have been reviewed in
full, but are omitted from the present discussion.

695).  She was discharged in February, 2016 at "appropriate weight for gestational age" in stable condition (Tr. 695-696).  A June, 1996, neurologist Alexa Canady, M.D. noted that an MRI of the brain showing "some ventricular asymmetry" did not require intervention (Tr. 385).  An August, 1996 examination was within normal limits (Tr. 382).

In November, 2002, Alita Rice, M.D. noted Plaintiff's report of hearing difficulties (Tr. 441).  Plaintiff was diagnosed with an ear infection (Tr. 433).  Dr. Rice's July, 2004 records note that Plaintiff was beginning psychiatric counseling for an anxiety disorder (Tr. 432). April, 2008 records note Plaintiff's report of recent seizure-like activity (Tr. 416). Treating records note that Plaintiff was prescribed medication for ADHD as early as December 12, 2008 (Tr. 378).  June, 2009 records note that Plaintiff did not have a seizure disorder (Tr. 376).

A March, 2013 medication review by psychiatrist David Harris, M.D. notes that Plaintiff was doing well with a stable mood and good "concentration, attention and focusing" (Tr. 292).  Plaintiff reported that she spent time on student council and enjoyed reading and completing puzzles (Tr. 315).  In July, 2013, Plaintiff reported that the psychotropic medications were helping her and that without the medication, she experienced trouble concentrating and became "easily angry" (Tr. 297).  Her speech and thought content were deemed within normal limits (Tr. 298).  She was assigned a GAF of 50 due to depression,

ADHD, and educational and social problems[2] (Tr. 299). The following month, Monica Smith, M.D. noted Plaintiff's report of good results from Abilify, good sleep patterns, and that she was starting college the same month (Tr. 301).

January, 2014 records state that Plaintiff did well in her first semester of college but reported continued anxiety since being "off the Abilify" (Tr. 310, 314). Plaintiff appeared cooperative with a goal directed thought process (Tr. 311). A community college report card shows that Plaintiff received As and Bs in all subjects except for a C- in American History and a D in chemistry (Tr. 322). In April, 2014, she reported "no depression or mood changes" while on medication (Tr. 485). In June, 2014, Plaintiff reported "situational" stressors such as final exams and interpersonal problems (Tr. 490).

In September, 2014, Plaintiff reported that she became "stressed out" when given a lot of homework (Tr. 478). She reported that she became angry after her parents borrowed her babysitting money for cigarettes (Tr. 481). October, 2014 counseling records state that Plaintiff enjoyed college more after transferring to Schoolcraft College (Tr. 468). Counseling records from December, 2014 note Plaintiff's report that she had no real friends (Tr. 462). A Fall, 2014 progress report shows that Plaintiff earned a GPA of 3.465 for the semester (Tr. 333). A January, 2015 medication review shows that Plaintiff's condition was

---

[2]A GAF score of 41 to 50 indicates '[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning,' such as inability to keep a job. *Diagnostic and Statistical Manual of Mental Disorders—Text Revision* ("*DSM–IV–TR*"), 34 (4th ed. 2000).

stable with medication (Tr. 454). Counseling records, noting a GAF of 57, state that Plaintiff was engaged, cooperative, and enthusiastic about new learning new coping techniques[3] (Tr. 460).

An April, 2015 medication review shows that Plaintiff's symptoms were well controlled (Tr. 341). In August, 2015, Plaintiff reported that she had moderate difficulty remembering to do "important things," making new friends, and dealing with people she did not know (Tr. 448-449). Counseling notes from the following month note that Plaintiff was "easily engaged," and appeared happy despite self-reported problems interacting with others (Tr. 496). A medication review from the same month notes Plaintiff's report that she was isolated and had trouble remembering and was thus prevented from working (Tr. 504). She was assigned a GAF of 57 due to depression, ADHD, occupational problems, and problems with her primary support group (Tr. 510).

The same month, Dr. Smith completed a questionnaire, noting the conditions of ADHD, depression, anxiety, difficulty focusing, anxious thoughts, mood fluctuation, and agitation with "recurrent, severe panic attacks" (Tr. 739, 740). She found marked restriction in activities of daily living and social functioning (Tr. 741). In terms of work-related limitations, she found marked limitation in the ability to understand, remember, or carry out

---

[3]A GAF score of 51–60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. *Diagnostic and Statistical Manual of Mental Disorders—Text Revision* ("*DSM–IV–TR*"), 34 (4th ed.2000).

complex instructions or detailed assignments; dealing with supervisors, coworkers, and the public; and maintaining focus and concentration (Tr. 741). Dr. Smith found that Plaintiff would have moderate difficulty understanding, remembering, and carrying out one or two-step job instructions or using public transportation and only "slight" problems traveling unaccompanied outside the home (Tr. 741). She found that Plaintiff's psychological symptoms would interfere with the ability to work three times a month (Tr. 742). The same month, therapist Susan Pumaica found that Plaintiff did not experience any "severe" impairment in activities of daily living but experienced moderate difficulty remembering to do "important things," learning a new task, dealing with unfamiliar people, making new friends, and doing work/school tasks "well" and "quickly"[4] (Tr. 448-449, 749-750). She found otherwise "mild" or non-existent psychological restriction (Tr. 448-450, 749-751).

## 2. Non-Treating Records

In May, 2015, psychologist Mitchell Solomon, Ph.D. performed a consultative examination on behalf of the SSA, noting Plaintiff's report that she was studying to be an elementary school teacher (Tr. 326). Plaintiff reported that she enjoyed "little kid's stuff" such as American Girl dolls and reading Nancy Drew mysteries (Tr. 326). She reported that she enjoyed watching movies, playing games, sewing, and baking but had a bad temper and did not have any current close friends (Tr. 326). Dr. Solomon noted a "somewhat immature" and "fidgety" demeanor (Tr. 326-327). She exhibited a normal memory and was able to

---

[4]Also identified as Susan Rumaila (Tr. 749-752).

perform simple calculations without difficulty (Tr. 327). Dr. Solomon concluded that due to mild deficits in memory, judgment, vocabulary, information, and abstract thinking, Plaintiff was limited to work involving "simple, verbal or written instructions[] with regular supervision" (Tr. 328). He noted that her ability to work was "impacted by her ability to manage mood symptoms . . . ." (Tr. 328). In an accompanying Residual Functional Capacity Assessment, Dr. Solomon found mild limitation in the ability to understand, remember, and carry out complex instructions; make judgments or complex work-related decisions; interact appropriately with the public, supervisors, and coworkers; and respond appropriately to changes in the work routine (Tr. 330-331).

In May, 2014, Kathy A. Morrow, Ph.D. performed a non-examining review of the treating and consultative records on behalf of the SSA, finding that as a result of affective and anxiety disorder, Plaintiff experienced mild limitation in activities of daily living and moderate limitation in social functioning and concentration, persistence, or pace (Tr. 80-82).

### 3. Records Submitted After the ALJ's November 3, 2015 Determination

A May 1, 2016 MRI of the brain showed no acute intra cranial abnormality but showed "subtle" asymmetries and a right cerebral hemisphere slightly smaller than the left of "uncertain" significance (Tr. 23). Later the same month, Plaintiff underwent a consultative neuropsychological evaluation[5] (Tr. 15-22). The consultative source noted that

---

[5]

The consultative source's signature is missing from the transcript. Therefore, it is unclear whether the examiner is a psychiatrist, doctor of psychology, or another "acceptable" medical source. *See* SSR 06-03p, 2006 WL 2329939, *1-2 (August 9, 2006).

Plaintiff was well groomed, alert, and oriented with normal social reciprocity (Tr. 16).  She

did not exhibit fidgety behavior (Tr. 16).  Plaintiff's mother reported that Plaintiff was unable

to live independently and had problems with memory, anger, loneliness, and a labile mood

(Tr. 15).  IQ, verbal comprehension, and processing speed testing fell in the normal range

(Tr. 19).  Plaintiff's perceptual reasoning and working memory index were in the low

average ranges (Tr. 19-20).  She exhibited impairments in fine motor skills and sustained

attention and vigilance (Tr. 20).  The examiner found that Plaintiff's mother's account of her

daughter's level of impairment "not wholly consistent" with Plaintiff's good academic

performance (Tr. 21).  The examiner concluded that in light of the diagnosis of "ADHD and

neurocognitive weaknesses," Plaintiff should be given preferential seating near the teacher

in classes, extended time to complete tests and quizzes, and permission to take tests/quizzes

"in a private setting" (Tr. 22).

### D. Vocational Expert Testimony

VE Louann Castellano testified that Plaintiff had no past relevant work (Tr. 72).

The ALJ then described a hypothetical individual of Plaintiff's age, education, and

lack of work experience:

> [N]o exertional limitations.  She would be limited to unskilled two to three
> step work, no work with the public, moderate concentration, pace, and
> persistence limitations off task up to 10 percent.  Are there any jobs that
> such an individual could perform? (Tr. 72-73).

In response, the VE testified that the above limitations would allow for the

performance of the unskilled, exertionally medium work of a laundry worker (100,000 jobs

in the national economy) and unskilled, exertionally light work of a sorter (300,000); and

bagger/packager (350,000)[6]  (Tr. 73).  The VE testified that if the hypothetical individual

were additionally limited by lack of attentiveness or the need to be reminded to stay on task

twice an hour, all competitive work would be precluded (Tr. 73-74).

### E. The ALJ's Decision

Citing the medical records, the ALJ found that Plaintiff experienced the severe

impairments  of "anxiety; depression; [and ADHD]" but that none of the conditions met or

equaled any impairment listed in 20 C.R.F. Part 404, Subpart P, Appendix 1 (Tr. 18).   The

ALJ found that Plaintiff experienced mild limitation in activities of daily living and moderate

limitation in social functioning, and concentration, persistence, or pace (Tr. 33-34).  She

found that Plaintiff retained the following residual functional capacity ("RFC"):

> [A] full range of work at all exertional levels but with the following
> nonexertional limitations: she is limited to two to three step work . . . moderate
> concentration, persistence, and pace limitations (would be off task 10% of the
> workday), and no work with the public (Tr. 35).

Citing the VE's testimony, the ALJ found that Plaintiff  could work as a laundry worker,

---

[6]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds
at a time and occasionally lifting or carrying articles like docket files, ledgers, and small
tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or
carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50
pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and
that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with
frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires
"lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of
objects weighing 50 pounds or more. § 404.1567(e).

sorter, and packer (Tr. 41, 73).

The ALJ discounted the allegations of disability, noting that as of November, 2012, Plaintiff was going to school, on school council, spent time with family and friends, and loved to read and do puzzles (Tr. 36).  The ALJ cited March, 2013 records noting a stable mood, good concentration, and good sleep habits (Tr. 36).  The ALJ noted that as of July, 2013, Plaintiff reported that her medication helped her control her anger and maintain focus (Tr. 37).  She noted that Plaintiff's psychological condition either improved or remained stable in 2014 and 2015 (Tr. 38).  The ALJ noted that Plaintiff was able to maintain a 3.465 grade point average at Schoolcraft college (Tr. 38).

### III. STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6ᵗʰ Cir. 1985).  Substantial evidence is more than a scintilla but less that a preponderance.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*   800 F.2d 535, 545 (6ᵗʰ Cir. 1986)(en banc).  In determining whether the evidence is substantial, the court must "take into

account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.  FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

-13-

# V.  ANALYSIS

## A.  Remand for Consideration of the Newer Evidence

Plaintiff makes several arguments for remand, arguing first that the case should be remanded pursuant to the sixth sentence of 42 U.S.C. § 405(g) for consideration of the evidence created subsequent to the ALJ's decision. *Plaintiff's Brief,* 22-24, *Docket #15,* Pg ID 862; *See* II.C.3., *above.*

The Appeals Council declined to review the newer evidence, created in May, 2016, on the basis that it not relevant to the determination of whether Plaintiff was disabled as of the date of the ALJ's November 3, 2015 decision (Tr. 2).  Where the Appeals Council denies a claimant's request for a review of an application based on new material, the district court cannot consider that new evidence in deciding whether to "uphold, modify, or reverse the ALJ's decision." *Cotton v. Sullivan,* 2 F.3d 692, 696–696 (6th Cir.1993).  Instead, the sixth sentence of 42 U.S.C. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..."  As such, this Court may consider the additional evidence only for purposes of determining whether remand for consideration of the newer evidence is appropriate under the sixth sentence of § 405(g).

Although Plaintiff argues that the later submitted evidence is both new and material, her request for consideration of the newer material should be denied because she has not

provided "good cause" for its tardy submission. While Plaintiff states that the May, 2016 "testing was undertaken due to the same chronic cognitive and behavioral complaints that are at issue in the claim," *Plaintiff's Brief* at 22, she does not offer any reason that the evidence could not have been procured before the November 3, 2015 denial of benefits. Post-decision evidence created for the purpose of rebutting an ALJ's decision does not satisfy the "good cause" requirement of the sixth sentence of § 405(g). *Haney v. Astrue*, 2009 WL 700057, *6 (W.D. Ky. March 13, 2009)("[G]ood cause contemplates more than strategic delay, or sandbagging, of evidence and more than simple miscalculation of the necessity of producing such evidence in the first instance to establish a claim of disability")(*citing Thomas v. Secretary*, 928 F.2d 255, 260 (8th Cir., 1991)); *see also Ledford v. Astrue*, 311 Fed.Appx. 746, 757, 2008 WL 5351015, *10 (6th Cir. December 19, 2008)(*citing Martin v. Commissioner of Social Security*, 170 Fed.Appx. 369, 374-75, 2006 WL 509293 *5 (6th Cir. March 1, 2006)). The Plaintiff's failure to provide good cause for the grossly untimely submission of the newer material forecloses a "Sentence Six" remand.

Plaintiff's earlier discussion of the newer findings notes that the May, 2016 imaging studies and exam were precipitated by Plaintiff's mother's "main concerns" [of] worsening attention and memory, irritability, controlling her anger, and loneliness due to lack of friends." *Plaintiff's Brief* at 18 (*citing* Tr. 15)). However, Plaintiff's acknowledgment that the exam (post-dating the administrative decision by six months) was scheduled due to "worsening" cognitive problems also forecloses a Sentence Six remand. Plaintiff's condition

subsequent to the date of the ALJ's determination is intrinsically immaterial to whether she was disabled as of November 3, 2015. *See Sizemore v. Secretary of Health & Human Services*, 865 F.2d 709, 712 (6th Cir. 1988). Where a claimant believes that her condition has worsened subsequent to the administrative determination, the remedy is to make a new application for benefits. *Id.*

Aside from Plaintiff's failure to show good cause for the later submission, she cannot meet the "materiality" requirement for a Sentence Six remand. To satisfy the "materiality" requirement for a "Sentence Six" remand, a claimant "must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence" *Id.* at 11. The examiner noted impairments in sustained attention and vigilance at the May, 2016 exam (Tr. 20). However, the RFC accounted for her problems with long-term focus by restricting her to unskilled work that allowed for moderate deficiencies in concentration, persistence, or pace (Tr. 35). The May, 2016 conclusion that Plaintiff experienced impaired fine motor skills and should be allowed accommodations in the academic setting (Tr. 20, 22) stands at odds with Plaintiff's denial of any physical limitations, the ability to use a computer to type academic papers (Tr. 59-61), and her ability to sustain a full-time academic load with an almost 3.5 grade point average[7] (Tr. 54, 333). The materiality of the May, 2016 records is further

---

[7]Further, none of the treating records for the relevant period suggest that Plaintiff experienced impaired fine motor skills.

undermined by the examiner's observation that Plaintiff's mother exaggerated her daughter's level of impairment. While the examiner factored the reports of Plaintiff's mother into the final determination, s/he commented that her account of her daughter's level of impairment was "not wholly consistent" with Plaintiff's good academic record (Tr. 22).

Because Plaintiff cannot show that the newer evidence is material to the ALJ's determination or provide good cause for the tardy submission of the newer evidence, the Court should deny her request for a Sentence Six remand.

### B. Plaintiff's Other Arguments for Remand

In Plaintiff's second, third, and fourth arguments, she contends, in effect, that the ALJ erred by according inordinate weight to the evidence supporting the non-disability finding while giving short shrift to the evidence supporting the opposite conclusion. *Plaintiff's Brief* at 24-33.

### 1. The Step Three Findings

In her second argument, Plaintiff argues that the ALJ erred at Step Three of the sequential analysis by declining to finding that she met Listing 12.04 (affective disorders) or 12.06 (anxiety disorders). She argues further that the ALJ erred by failing to consider Listing 12.10 for the condition of pervasive developmental disorder. She notes that the August, 2015 treating opinion that she experienced marked limitation in activities of daily living and social functioning, if credited, directs a finding of disability (Tr. 741).

At Step Three of the sequential analysis, a finding of two marked limitations in the

three categories of daily living and social functioning and moderate limitation in concentration, persistence, or pace resulting from the conditions of either depression or anxiety would result in a finding of disability. *See* 20 CF.R. Part 404, Subpart P, Appendix 1 §§ 12.04(B), 12.06(B).   Likewise, the applicable sections of Listings 12.04(C) and 12.06(C) state that a finding of a "[c]urrent history of 1 or more years' inability to function outside a highly supportive living arrangement" as a result of depression would also result in a disability finding. *Id.*

The ALJ permissibly gave "great weight" to Dr. Morrow's April, 2014 non-examining finding that Plaintiff experienced only mild restriction in activities of daily living and moderate limitation in social functioning and concentration, persistence of pace (Tr. 80-82).   The ALJ noted that Dr. Morrow's finding was based on the psychiatric treating records up until that time showing good focus, participation in student government, a stable mood, and normal speech and thought (Tr. 292, 292, 301, 315, 485).   While Plaintiff argues that Dr. Morrow's findings did not have benefit of the later records, the ALJ noted that Dr. Solomon's May, 2015 consultative findings also supported a finding of mild psychological restriction (Tr. 330-331).   While the ALJ accorded generally "great weight" to Dr. Solomon's findings, she declined to accept his finding that Plaintiff would be unable to handle her benefit funds, noting that Plaintiff was able to maintain good grades and perform calculations on an exam (Tr. 39).

As noted further below, the ALJ also provided an thorough rationale for rejecting Dr.

Smith's August, 2015 treating source findings of marked psychological limitations (Tr. 39). The ALJ noted that Plaintiff was able to perform a wide variety of household tasks and attend college despite her disinclination to drive or take public transportation (Tr. 39). In terms of social functioning, the ALJ noted that while Plaintiff reported trouble making friends, treating records noted that she was consistently "cooperative and polite" and was "able to function socially sufficiently to attend classes and therapy" (Tr. 39). The ALJ noted that despite the diagnosis of ADHD, she was able to "get good grades in college courses" and did not exhibit cognitive limitations (Tr. 39).

Plaintiff's alternative claim that she meets the "C" criteria under Listing 12.04 or 12.06 is unavailing. The applicable section of both Listings states that a finding of a "[c]urrent history of 1 or more years' inability to function outside a highly supportive living arrangement" would also result in a disability finding. 20 C.F.R. Pt. 404, Subpt. P, App. 1. §§ 12.04(C),12.06(C).[8] However, the ALJ noted that the finding that Plaintiff did not require such degree of supervision was supported by her ability to engage in a wide variety of activities, attend school, care for her own personal needs, read, do puzzles, and use a

_____

[8] It should be noted that in September, 2016, the SSA revised its Listings for mental disorders. *See Revised Medical Criteria for Evaluating Mental Disorders*, 81 Fed. Reg. 66138-01 (Sept. 26, 2016). Included were language changes to the "B" and "C" criteria of the listings discussed below. The changes, effective January 17, 2017, are not applicable to the present case, decided November 3, 2015. *Id.* at fn. 1 ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions"); *see also Hooks v. Colvin*, 2017 WL 622215, *7 (N.D. Ill., February 15, 2017).

computer (Tr. 34, 36). Consistent with the ALJ's finding, my own review of the record indicates that Plaintiff was able to save "babysitting money;" showing that (1) her judgment was apparently deemed adequate to oversee younger individuals on at least a temporary basis, and (2) she was able to save money despite her claim that she was prone to impulse spending (Tr. 37, 481).

Plaintiff's argument that the ALJ erred by failing to consider the condition of pervasive developmental disorder under Listing 12.10 should also be rejected. None of the evidence from either the relevant period or the newer May, 2016 records note such a diagnosis and the ALJ was under no obligation to consider whether Plaintiff met the corresponding listing. *McPhee v. Commissioner of Social Security*, 2017 WL 4270029, at *8 (E.D.Mich. September 26, 2017)(Morris, J.)(*citing Sheeks v. Commissioner of Social Security Administration*, 544 Fed.Appx. 639, 641, (6th Cir. November 20, 2013))(ALJ not required "to consider every Listing or to consider Listings that the claimant 'clearly does not meet'"). Finally, even if Plaintiff could establish the presence of a developmental disorder, Listing 12.10, also requires a finding of two marked limitations in activities of daily living, social functioning, or concentration, persistence, or pace. 20 C.F.R. Pt. 404, Subpt. P, App. 1.§ 12.10. Substantial evidence showing that Plaintiff experienced less than marked limitations defeats her claim that she meets Listing 12.10 as well as Listings 12.04 and 1206.

## 2. The Treating Physician Analysis

Contrary to Plaintiff's third argument, the ALJ provided an adequate rationale for

rejecting Dr. Smith's August, 2015 finding of marked limitations.  To be sure, "[i]f the opinion of the claimant's treating physician is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009)(internal quotation marks omitted)(*citing Wilson v. CSS*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2)). However, in the presence of contradicting substantial evidence, the ALJ may reject all or a portion of the treating source's findings, *Warner v. Commissioner of Social Sec.*, 375 F.3d 387, 391-392 (6th Cir. 2004), provided that he supplies "good reasons" for doing so. *Wilson*, at 547; 20 C.F.R. § 404.1527(c)(2); SSR 96–2p, 1996 WL 374188, *5 (1996).

The ALJ did just that.  She supported her accordance of "little weight" to the August, 2015 findings of marked limitations by noting that the treating records contained no support for "severe or regular panic attacks" (Tr. 39, 739-741).  She noted that the finding of marked limitation in activities of daily living was contradicted by Plaintiff's ability to attend school, bake, perform household chores, sew, and read books (Tr. 39).  The ALJ noted that the finding of marked limitations in social functioning stood at odds with Plaintiff's ability to interact appropriately with family, teacher, and treating and consultative sources (Tr. 40). The ALJ's conclusion that the marked findings were unsupported by the treating records is prefaced by a two-page discussion of the psychiatric treating records showing that with the exception of the situational stressors of losing a family pet, a disagreement with her

grandmother, and anger at her parents for borrowing her babysitting money, she exhibited a stable mood, good focus, good sleep habits, and mostly unremarkable affect (Tr. 36-38). The ALJ noted that Plaintiff's ability to take a full load of college courses and obtain good grades also stood at odds with the August, 2015 opinion (Tr. 40).

Plaintiff's assertion that the ALJ automatically committed "reversible error" by adopting Dr. Solomon's consultative findings over the treating opinions is likewise without merit. "The Social Security regulations classify 'acceptable medical sources into three types: nonexamining sources, nontreating (but examining) sources, and treating sources.'" *Brooks v. CSS*, 531 Fed.Appx. 636, 641 (August 6, 2013)(*citing Smith v. CSS*, 482 F.3d 873, 875 (6th Cir. 2007)). "[A] nonexamining source's opinion is given less deference than an examining (but not treating) source's opinion, which is given less deference than a treating source." *Id*. at 642 (*citing Norris v. CSS*, 461 Fed.Appx. 433, 439 (6th Cir. 2012)). However, "'[i]n appropriate circumstances, opinions from State agency medical and psychological consultants ... may be entitled to greater weight than the opinions of treating or examining sources.'" *Id.* (*citing* SSR 96–6p, 1996 WL 374180, *3 (July 2, 1996)). For the same reasons, the claim that Dr. Solomon's observations that Plaintiff was "fidgety" and had to be redirected during the exam (Tr. 326-327) stood at odds with his Residual Functional Capacity Assessment showing only "mild" psychological restriction was "internally inconsistent" should be rejected. While Dr. Solomon noted some degree of hyperactivity during the examination, the accompanying finding of only mild psychological limitation

quantifies rather than contradicts his examination observations.   The ALJ's conclusion that Dr. Solomon's examination observations and assessment were generally consistent should not be disturbed.   For overlapping reasons, while Plaintiff faults the ALJ for also according "great weight" to Dr. Morrow's earlier non-examining findings, they are not inconsistent with Dr. Morrow's later conclusion that Plaintiff did not experience marked psychological limitation.

### 3.  The Credibility Determinations

Finally, Plaintiff asserts that her own testimony was erroneously rejected by the ALJ. However, she does not identify any procedural or substantive deficiency in the credibility determination and my own review of the record shows that the ALJ provided more than adequate reasons for discounting the claims of disability, including mostly unremarkable treating records and Plaintiff's ability to attend college and engage in a wide variety of household  and  leisure  activities.   As  such,  the  deference  generally  accorded  the administrative credibility determination is appropriate here. *See Cruse v. CSS*, 502 F.3d 532, 542 (6th Cir. 2007)("ALJ's credibility determinations about the claimant are to be given great weight").

Plaintiff also argues that the ALJ failed to weigh the opinions of her mother and grandmother.   As to the these opinions, SSR 96-7p states that "non-medical sources such as family and friends" "may provide information from which inferences and conclusions may be  drawn"  regarding  the  a  claimant's  credibility  and  "may  be  especially  helpful  in

establishing a longitudinal record.  *Id.*, 1996 WL 374186, at *8 (July 2, 1996).  SSR 06–3p directs that the ALJ must consider evidence from "other, " non-medical sources such as family members or friends whose observations may be helpful in developing an assessment of a claimant's limitations. 2006 WL 2329939, *6 (2006); 20 C.F.R. § 404.1513(d)(4).

Contrary to Plaintiff's claim that the ALJ did not consider her mother's opinion, the ALJ discussed  the mother's "third-party function report," noting that it was "generally consistent" with Plaintiff's testimony (Tr. 35).  The ALJ also cited Plaintiff's mother's testimony that Plaintiff needed constant supervision, needed a set routine, and was unable to focus or live independently (Tr. 36). The ALJ found the allegations of limitation "not entirely credible" (Tr. 36).  Having considered the mother's report and testimony, the ALJ was not required to do more.  "'The fact that the ALJ is required to consider such third-party statements does not mandate that the ALJ adopt them...'" *Shipman v. Commissioner of Social Security*, — Fed. Supp 3d — 2017 WL 4236553, at *7 (E.D.Mich., 2017)(*citing Shelton v. Colvin*, 2015 WL 5569024, *17 (W.D. Okla. Aug. 24, 2015)) report and recommendation adopted, 2015 WL 5579803 (W.D. Okla. Sept. 22, 2015).

In contrast, the administrative determination contains no mention of the August 17, 2015 "Disability Assessment" by Plaintiff's grandmother Rosalie Guziel in which Ms. Guziel found that Plaintiff had "extreme or cannot do" limitations in "remembering to do important things," "starting and maintaining a conversation," "standing for long periods," "staying by . . . herself for a few days," dealing with unknown people, maintaining friendships, getting

along with people close to her, joining in community activities, living with dignity, and creating problems for her family and self (Tr. 272-274).  Ms. Guziel also found "severe" limitation in learning new tasks, completing house hold tasks thoroughly and quickly, and problems resulting from "barriers or hindrances," (Tr. 272-273).  She found moderate difficulties in walking for long distances, getting dressed, eating, doing academic tasks "well," and problems related to "drain[ing]" the family finances (Tr. 272-274).

Whether the ALJ's failure to acknowledge Ms. Guziel's opinion requires a remand is a close question.  On one hand, a portion of Ms. Guziel's finding of "extreme," "severe," and even "moderate" limitation is either wholly unsupported by the transcript or grossly contradicted by Plaintiff's assessment of her own limitations.   For example, Ms. Guziel's statement that Plaintiff had respectively "extreme" and moderate limitation in standing for long periods and walking long distances stands at odds with Plaintiff's testimony that she did not experience any physical limitations.   Likewise, Ms. Guziel's finding of "extreme" limitation in starting and maintaining a conversation and dealing with unknown people appears is undermined by  the treating and consultative records showing that Plaintiff was consistently pleasant and cooperative; the absence of difficulty navigating in an academic setting; and the ability to achieve a good grade point average in her full-time studies.  It is well established that a remand is not warranted, even in the case of the failure to analyze a treating physician's opinion, where the "opinion is so patently deficient that the Commissioner could not possibly credit it." *Wilson v. Commissioner of Social Sec.*, 378 F.3d

541, 547 (6ᵗʰ Cir. 2004)(*citing NLRB v. Wyman–Gordon*, 394 U.S. 759, 766 n. 6, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969)(plurality opinion)("where 'remand would be an idle and useless formality,' courts are not required to 'convert judicial review of agency action into a ping-pong game'").

Nonetheless, the facts of this case lean slightly toward remand.  First, while an ALJ is not required to discuss every scrap of evidence in making the administrative determination, she is required to consider all relevant evidence, including the evidence from the non-medical sources.  SSR 06-3p at *8.  Here, the failure to acknowledge Ms Guziel's opinion that her granddaughter experienced  "extreme limitations," given the ALJ's thorough discussion of the mother's opinion, supports the inference that the ALJ overlooked rather than simply declined to discuss these findings.

Second, the Court has also considered Defendant's contention that the ALJ's failure to discuss Ms. Guziel's opinion is harmless error because the opinion is not supported by the treating records.  *Defendant's Brief,* 24-25, *Docket #18,* Pg. ID 901 (*citing Pasco v. Commissioner of Social Security,* 137 F. App'x 828, 842 (6th Cir. June 23, 2005))("Given the ALJ's lengthy discussion of the lack of objective evidence supporting these claimed physical limitations, we find that the ALJ's failure to mention specifically the mother's letter is not reversible error").  Defendant cites Dr. Smith's treating records showing "consistently documented normal mental status examinations." *Id.* at 24.  My own review of the psychiatric treating records, discussed *above,* supports the ALJ's conclusion that Plaintiff's symptoms

of depression, anxiety, and ADHD were well controlled.  However, while Dr. Smith's treating records support the finding that the psychological symptoms were less than disabling, he completed a questionnaire in August, 2015 stating that Plaintiff experienced disability level limitations in daily living and social functioning (Tr. 741-742).  In fact, Dr. Smith's August, 28, 2015 findings appear to "dovetail" with Ms. Guziel's findings made just 11 days earlier[9] (Tr. 272-274, 741-742).  Moreover, Dr. Smith's "opinion" is not the only evidence supporting Ms Guziel's opinion.  While as discussed above, the ALJ did not err in rejecting Dr. Smith's August, 2015 opinion, the treating evidence (showing a finding of academic and social problems) constitutes some "objective evidence" supporting Ms Guziel's opinion (Tr. 299).  As such, *Pasco,* where the mother's opinion was unsupported by any objective evidence, is disguishable.

For these reasons, a remand is required.  However, Plaintiff has presented far from an "overwhelming" case for disability and the single error discussed above does not entitle her to an award of benefits. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171 (6th Cir.1994).  Consistent with the above discussion, the case should be remanded to the administrative level for the limited purpose of addressing Ms. Guziel's opinion.

---

[9]

Notably, while both sources found disability level limitation in activities of daily living and social functioning, neither found that Plaintiff experienced significant problems traveling outside the home (Tr. 272, 741).  The twin findings that Plaintiff did not experience significant problems leaving the house is at best perplexing, given Plaintiff's own testimony that she was afraid to drive or take public transportation and relied on her parents to drive her to her college classes (Tr. 55, 62).

**CONCLUSION**

For these reasons, I recommend that Plaintiff's Motion for Summary Judgment [Docket #15] be GRANTED to the extent that the case is remanded for further fact-finding consistent with §  **V(B)(3)**. of this Report, and that Defendant's Motion for Summary Judgment [Docket #18] be DENIED.

Any objections to this Report and Recommendation must be filed  within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: January 3, 2018                    s/R. Steven Whalen
                                          R. STEVEN WHALEN
                                          U.S. MAGISTRATE JUDGE

---

### CERTIFICATE OF SERVICE

I hereby certify on January 3, 2018 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically.  I hereby certify that a copy of this paper was mailed to non-registered ECF participants on January 3, 2018.

                                          s/Carolyn M. Ciesla
                                          Case Manager for the
                                          Honorable R. Steven Whalen

-29-